Mabshall, C. J.
There are three major questions for determination: (1) Did three judges of the court of common pleas of Hamilton county have jurisdiction over a disbarment proceeding? (2) Was the order of indefinite suspension null and void? (3) Can such a judgment be collaterally attached ?
*129 The jurisdiction of the court of common pleas to hear a disbarment proceeding is conferred by Section 1707, General Code:
“The Supreme Court, Circuit Court, or court of common pleas may suspend or remove an attorney at law from office, for misconduct in office, conviction of crime involving moral turpitude, or unprofessional conduct involving moral turpitude. Such suspension or removal shall operate as a suspension or removal in all the courts of the state. Judges of such courts are required to cause proceedings to be instituted against an attorney at law, when it comes to the knowledge of any such judge in whose court such attorney practices, that he is probably guilty of any of the causes of suspension or removal.”
It is claimed that the “court of common pleas” refers to all of the judges of the court of common pleas of the county in which such a proceeding is instituted, and that three judges in Hamilton county, where nine judges regularly hold office, do not have jurisdiction to hear and determine a disbarment proceeding, and that the judgment actually entered is for that reason null and void. This suggestion gives rise to many inquiries: Is a disbarment proceeding different from any other proceeding which may be instituted in the court of common pleas? In a disbarment proceeding, may the court of common pleas in Hamilton county be constituted by a single judge, or by any number of judges less than the whole number If not, must the entire number of judges elected or appointed actually sit in banc to constitute a “court,” or will physical or *130 legal disability or absence from any cause of one or more of the judges qualify the remainder to sit as a valid court, in the absence of those who are absent or disqualified? If so, how and by whom is such alleged or pretended disqualification determined? If the respondent raises the point that one or more of the judges is disqualified on the ground of prejudice or bias, and it is so adjudged, or in the event such disqualification is admitted by such judge or judges, who thereupon voluntarily stand aside, must other judges from other counties be designated to sit in their place? If the “court” consists of the entire number, may a majority sit, or may any number less than the whole constitute a quorum? If the entire number sits, may a majority or any number less than the whole render a valid judgment? In the event of an even number of judges holding office in any county, what would be the result of a tie vote? If the “court” means the entire number of judges, is the absence of one or more fatal to the jurisdiction, or is it an irregularity which may be waived, and does failure to object, or acquiescence in a hearing by only a portion, estop the respondent from complaining? Is it in the power of a single judge to prevent the hearing of a disbarment proceeding by refusing to participate therein? It sometimes happens that there are as many as eight common pleas judges sitting in Cuyahoga county by the designation of the Chief Justice, which number, added to the twelve resident judges, makes a total of twenty separate and distinct courts of common pleas sitting at one time, each and all hearing separate cases and entering orders and judgments; all such orders and judgments being the judgments of *131 the court of common pleas of that county. If a disbarment proceeding should come on for hearing during the time such additional judges were sitting in that county, would it be necessary for the eight foreign judges to participate in the hearing and decision of the disbarment proceeding? If a disbarment proceeding should be instituted in a county having only one common pleas judge, who did not feel qualified to sit, could the Chief Justice appoint another in his place? In such event, is it in the power of the Chief Justice to appoint a commission of several judges?
It is conceivable that any of the foregoing situations might arise, and the foregoing are only examples, and by no means all, of the contingencies which might be presented for determination if the contentions of the relator in this case should be sustained.
The foregoing interrogatories are propounded, not because an answer either in the affirmative or the negative would be decisive of the questions involved in this case, but because they show the absurd consequences which would follow a general rule which would declare that the “court of common pleas” means a joint session of all qualified judges of the county.
It is sought by relator to throw further light upon the meaning of the word “court” in the mind of the Ohio Legislature, by pointing to some sections of the General Code of Ohio wherein powers relating to certain provisional remedies are conferred upon “the court or a judge thereof,” as, for example, in granting an attachment, Section 11869; an injunction, Section 11877; a receivership, Section 11894; writ of habeas corpus, Section 12162; quo warranto, *132 Section 12306; and mandamus, Section 12288. As 8 concrete example of those statutes pertaining to provisional remedies we quote a part of Section 11869: “Such attachment may be granted by the court in which the action is brought, or by a judge thereof.” From this language, and similar language found in other related statutes, relator contends, not only that the conclusive inference must be drawn that a distinction is made, between courts and judges, but the further inference is claimed that the word “court” can never mean a single judge, but must always include all judges holding office in the county where the court is situated.
By reference to the Constitution, Section 2, Article IV, it is found that the Supreme Court is expressly made to consist of a Chief Justice and six judges, and that a majority shall be necessary to constitute a quorum or to pronounce a decision in ordinary cases. The Constitution contains no such provision concerning the court of common pleas, but, as will hereinafter be noticed, even contains a contrary provision.
It cannot be doubted that by these statutes, the Ohio Legislature has recognized the distinction between courts and judges. It is apparent, however, that no artificial or unusual distinctions are made, but, on the contrary, they are in perfect harmony with the distinctions recognized throughout English and American jurisprudence.
The court is a tribunal organized for the purpose of administering justice, while the judge is the officer who presides over that tribunal.
The terms “court” and “judge” are sometimes used interchangeably and synonymously, but they are never technically the same in meaning.
*133 A court is an incorporeal, political being, composed of one or more judges, who sit at fixed times and places, attended by proper officers, pursuant to lawful authority, for the administration of justice. It is only when a court is in session thus regularly constituted that it may lawfully perform its fixed and permanent functions, and it is in this sense that the term “court of common pleas” is used in Section 1707, General Code. On the other hand, by the provisions of Section 11869, General Code, and other sections, the Legislature under authority of Sections 4 and 18, Article IY of the Constitution, has conferred upon “judges,” as well as courts, certain power and authority in provisional matters, but by reference to those statutes it will be found that they are of a temporary and emergent nature, which may not always await the fixed, open session of the court.
All the sections referred to, conferring authority upon a “judge,” will be found to relate to provisional remedies to permit action of an emergent nature at times when the court is not in session.
These sections, therefore, throw no light upon the inquiry as to the number of judges necessary to constitute the court of common pleas, in a county where more than one judge holds office. The Legislature has attempted to settle this question by the provisions of Section 1556, General Code:
“The judges of the common pleas court in such county [Hamilton] may sit separately or otherwise, as they deem expedient.”
It may be doubted whether that statute is constitutional by reason of its general nature, and yet having application only to Hamilton county, but it is not necessary to base the judgment in this case upon any statutory enactment. Section 3, Article *134 I'V of the Ohio Constitution, provides in part as follows:
“One resident judge of the court of common pleas, and such additional resident judge or judges as may he provided by law, shall be elected in each county of the state by the electors of such county; and as many courts or sessions of the court of common pleas as are necessary, may be held at the same time in any county. Any judge of the court of common pleas may temporarily preside and hold court in any county.”
Manifestly there could not be more than one court or session at the same time in any county, if all judges holding office therein were required to sit in banc.
It is equally manifest that there can be no reasonable distinction between Section 1707, General Code, and other sections relating to the fixed and permanent functions of the courts of common pleas as the trial courts of the state under the Code of Civil Procedure, and, if we should sustain the contentions of relator in the instant case, by the same token it would have to be held that all the permanent orders and judgments entered in all the counties of the state where more than one common pleas judge has held office, during the past 25 years, are absolutely null and void.
Parties to litigation have no control or voice in determining the number of common pleas judges who may preside over sessions of the court, that matter being within the unlimited discretion of the judges of each county respectively.
In Hamilton county a rule has been promulgated, *135 known as rule No. 26 of the court of common pleas, which provides:
“Unless otherwise ordered by the judges in joint session, all disbarment proceedings shall be had in public before the presiding judge and two other judges to be named by him.”
It is contended by relator that this rule has been promulgated under authority of Section 1556, General Code, and that, that statute being unconstitutional, the rule itself must fall. If that rule and other court rules formulated for the government of courts of common pleas depended upon the authority of Section 1556, General Code, there would be a serious question in the mind of this court as to the validity of the rule. "We are of the opinion, however, that courts have the inherent right to formulate rules for their government, so long as such rules are reasonable and not in conflict with general laws. The right to make rules must be held to come within the implied powers of courts of justice. The Legislature has never prescribed in minute detail all of the procedure necessary in conducting courts of justice in an orderly manner, and many things must necessarily be left to the sound discretion of the court, and it is, of course, desirable that as far as possible those details be carried out in an orderly manner and according to a published rule. The implied powers of a court in this respect present a striking analogy to the implied powers of legislative bodies, a discussion of which is found in the celebrated case of McCulloch v. Maryland, 4 Wheat. (17 U. S.), 316, 4 L. Ed., 579. If we should paraphrase the able and far-famed declaration concerning implied powers in that case, and apply the same to the *136 implied and inherent powers of the courts, the following result would be attained. Let the ends be legitimate, let them be within the scope of the express powers conferred by the Constitution and statutes, and any means which are appropriate, and which are plainly adapted to that end, and which are not prohibited, but consistent with the letter and spirit of the Constitution and statutes, are lawful.
In this particular matter the Hamilton county common pleas judges have proceeded in a manner commendable in the highest degree. In the first place they have published a general rule for the hearing of such cases, and, when this particular proceeding came on for determination, a meeting composed of a quorum of the judges of the court of common pleas of that county was held, a special resolution was adopted, delegating the power to hear this particular proceeding to three of its members, and minutes of that meeting and resolution were spread upon the journal of the court. It may be remarked in passing that the situation of the relator is rendered more difficult at this time by the fact that at that time no objection was made to any of those proceedings, nor to the fact tha,t the case was directed to be heard by a commission of three members, instead of by all of the judges of the court then in office. We have therefore reached the conclusion that three judges had jurisdiction to hear and determine the controversy in the manner and at the time and place the same was heard.
Let us now inquire whether the order of indefinite suspension was null and void. By reference to Section 1707, General Code, hereinbefore quoted, we *137 find that the court may suspend or remove an attorney at law from office, and that such suspension or removal shall operate as a suspension or removal in all the courts of the state. The language of the entry of judgment in this matter in the trial court is somewhat confusing, because it is in form a suspension and in substance a removal. If the statute merely permitted the court to suspend, it might well be claimed that the court had exceeded its power, but, inasmuch as the court might either suspend or remove, and since the entry of judgment is clearly one or the other, it is difficult to see how it can be treated as a nullity on the sole ground that the term of the “suspension” is indefinite. The statute does not definitely require the court to fix a definite term of suspension, and having fixed an indefinite term, which clearly amounts to a removal, the action of the court is still within the limits of the authority conferred by that section. It is evident that the legislature did not intend a very distinct difference in the meaning of the two words, because by the provisions of Section 1709, General Code, power is conferred upon the same court to reconsider and modify the decree of suspension or removal upon the attorney filing a written motion therefor. It is evident, therefore, that the “removal” referred to in Section 1707 was not intended to effect a complete revocation of the title of the attorney to his office, because in such event he could only become invested with the title thereto by following the original method of admission to the bar. A “removal” being only an indefinite suspension, it seems quite clear and conclusive that the order made by the trial court *138 in this matter was within the power and authority of that court.
Having determined the first of the three major questions in the affirmative, and the second in the negative, it becomes unimportant to determine the question of collateral attack, but, the question having been argued and submitted for determination, it should be briefly stated that unless the court proceeded without jurisdiction, or the judgment as entered was null and void for uncertainty, or beyond the power and authority of the court to enter, the proper remedy to bring the judgment into question would be by prosecuting error to the Court of Appeals, and that any attack other than an error proceeding prosecuted to the Court of Appeals in accordance with the procedure relating thereto is collateral and unauthorized.
The peremptory writ of mandamus will therefore be denied.

Writ denied.

Wanamaker, Bobinson, Jones, Matthias, Hay and Allen, JJ., concur.